**In the Matter of ALLIED TECHNOLOGY, INC., An Ohio Corporation, Debtor.**

**Bankruptcy No. 3–80–00669.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Dec. 29, 1980.

---

Peter J. Donahue, Dayton, Ohio, for Allied Technology, Inc.

Gary A. Snyder and Jerry A. Spicer, Dayton, Ohio, Judith A. Scott, Legal Dept., Detroit, Mich., for UAW.

Ed. Smith, Dayton, Ohio, for Creditors and Dennis L. Patterson.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court for disposition of the debtor's request to reject an executory contract between itself and certain members of Local # 128 of the United Automobile, Aerospace & Agricultural Implement Workers of America (UAW) that were employed at the debtor's plant in Troy, Ohio. The debtor filed its application with the Court on June 6, 1980. A hearing was held on July 14, 1980, at which representatives for the Union appeared and objected to the proposed rejection of the collective bargaining agreement. The Union submitted a written memorandum of law at that time, and the Court allowed the debtor time to submit a memorandum contra. The following decision is based on the evidence submitted at the above hearing and the memoranda of the parties in interest.

The debtor, Allied Technology, Inc., filed its petition for relief under Chapter 11 of the Bankruptcy Reform Act on March 18, 1980. At that time, Allied was a party to a collective bargaining agreement with Local # 128 of the U.A.W. which the parties entered into on August 3, 1978. The expiration date of said agreement was set for August 2, 1981. On April 23, 1980, in accordance with the terms of the subject contract, Allied gave notice to members of the Local # 128 that all operations of its plant in Troy, Ohio would cease effective May 23, 1980 and that all employees of said plant would be permanently laid-off. The lay-off occurred as scheduled, and the debtor filed this application to reject the subject contract.

According to the terms of the labor agreement as well as of the Allied Technology, Inc. Collective Bargaining Pension Plan, the amount of pension benefits the debtor was obligated to pay its employees was based on the formula of $4.00 per month per year of credited service for each employee. Also according to the terms of these agreements, that amount was to increase in August, 1980, to $5.00 per month per year of credited service for each employee.

The Union contends in this proceeding that if the debtor rejects the collective bargaining agreement at this time, it will be liable to the pension plan trust for the entire amount of increased benefits due to the employees by reason of the above schedule of payments. Further, argues the Union, if the debtor continues the contract in effect until its expiration on August 2,

1981, the Pension Benefit Guarantee Corporation will guarantee a portion of the additional increase of $1.00 per month per year of credited service. Allied, on the other hand, claims the continuation of the contract would impose a substantial burden in the form of fees and premiums to the Pension Benefit Guarantee Corporation and payments toward the amortization of Allied's unfunded pension liabilities. Allied estimates the total amount of costs would be $58,650.00. Further, Allied points out that under 29 U.S.C. § 1362 it would be liable to the PBGC, at most, for an amount of benefits equal to 30% of its net worth. Because its net worth is virtually zero at this time, Allied claims it would not suffer any adverse consequences as a result of the rejection.

■■■ The Bankruptcy Court has authority to permit a debtor to reject a collective bargaining agreement. 11 U.S.C § 365; *Shopmen's Loc. U. No. 455, Etc. v. Kevin Steel Prod., Inc.*, 519 F.2d 698 (2d Cir. 1975). The *Shopmen's* court warned that a Bankruptcy Court must move cautiously when permitting the rejection of a collective bargaining agreement and should not permit a rejection solely because it would improve the financial status of the debtor.[1] This warning finds support in the language of *In re Overseas National Airways*, 238 F.Supp. 359 (D.C.N.Y.1965) where the court stated that a Bankruptcy Court should permit rejection of a collective bargaining agreement "only after thorough scrutiny and a careful balancing of the equities on both sides...", *supra* at p. 361–362. Thus, according to case law, the court's finding that a contract is onerous and burdensome is not enough to warrant its rejection; the court must go one step further and determine whether a rejection would be equitable under the circumstances.

■■■ According to the Union's contentions, the factor we must consider on their side of this question is that the members of Local # 128 employed at Allied will receive increases in their pension plan allotments from the employer if the contract remains in effect. There are no claims of lost wages due and owing as a result of work performed prior to the filing of the petition, presumably because under the Code such claims are given a priority status. *See* 11 U.S.C. § 507(a). There are no claims for pension benefits due and owing as a result of work performed prior to the filing date also because such claims are given priority under § 507(a). Finally, there are no claims for the loss of seniority because the natural consequence of Allied's shut-down is that these employees' seniority is useless. Thus, the singular effect of a rejection of the contract is that Allied's former employees will not enjoy the full increased pension benefit which they would have received from August, 1980 through August, 1981.

The factors to be considered on Allied Technology's side of this question are that the corporation has completely shut-down its business at the subject location and there is no chance it will resume production. If the contract were allowed to continue, even though no one in Local # 128 is working, the debtor will have to pay approximately $4,650.00 in fees and premium charges to the Pension Benefit Guarantee Corporation. Allied would also have to pay as much as $54,000.00 during the last year of the contract in order to comply with amortization requirements for its unfunded

---

1. While the *Shopmen's* case was decided under Section 313 of the Bankruptcy Act of 1898, we are confident that it is still applicable under the Code, at least to the extent that it interprets a debtor's rejection powers to include rejection of a collective bargaining agreement. Collier on Bankrutpcy's analysis of *Shopmen's* is that "there is little if any reason to expect the courts to apply a more stringent standard to collective bargaining agreements under Section 365 ... In any event, due to the serious nature of the financial consequences of the rejection of a collective bargaining agreement courts may continue to require a strong showing of burden and consideration of the interests of the employees. Although a mere showing that rejection would improve the financial condition of the debtor did not suffice under the Act, the result may be different under the Code due to the failure of Congress to incorporate a requirement of burdensomeness into section 365". [footnotes omitted]. 2 Collier on Bankruptcy (15th ed. 1979) ' 365.03 at p. 365–17. Similarly, see also, 2 Bkr ·L Ed. § 15:60.

pension liabilities. With regard to damages resulting from the breach, the Court agrees with Allied's interpretation of 29 U.S.C. § 1362 that it would be liable to the PBGC for, at most, 30% of its net worth (which in this case would amount to zero).

Based on the evidence presented, this Court is convinced that the equities of the situation require permission to Allied Technology to reject its collective bargaining contract with Local # 128. In addition to the items listed above, we would point out that any expenses that would arise as a result of continuing the contract would have to be paid out of funds already in existence, since Allied has closed all of its production operations, and no new revenues are forthcoming. Thus, a diversion of such funds to the expenses of the contract would work a direct hardship on the unsecured creditors affected by the debtor's Chapter 11 plan. The likely result would be a failure to effectuate a plan. This is a similar situation as that encountered in *In re Alan Wood Steel Co.*, 98 LRRM 2400 (D.C.Pa. 1978). We believe the *Alan Wood* court made a thorough analysis of the case law governing the question of rejection of collective bargaining agreements; and, we are in accord with its findings under a factual situation which is substantially similar to the case at bar.

Therefore, based on an analysis of the facts, it is hereby *ORDERED, ADJUDGED AND DECREED*, that the equities in this case warrant a rejection of the collective bargaining agreement between the within parties;

It is further *ORDERED, ADJUDGED AND DECREED*, that said contract will be deemed rejected as of the date that employment was terminated.