**In re PRICE CHOPPER SUPERMAR-KETS, INC., Debtor.**

**Bankruptcy No. 81–01837–M.**

United States Bankruptcy Court,
S. D. California.

April 14, 1982.

Frederick Martin, Jr. (argued), Perry T. Christison, Christison & Martin, San Diego, Cal., for trustee.

Barrett J. Foerster (argued), Olins, Foerster & Siegel, San Diego, Cal., for Union.

## MEMORANDUM OPINION REGARDING REJECTION OF COLLECTIVE BARGAINING AGREEMENT

JAMES W. MEYERS, Bankruptcy Judge.

### I

### FACTS

On June 16, 1981, the debtor, Price Chopper Supermarkets, Inc., filed for protection under Chapter 11 of the United States Bankruptcy Code ("Code").[1] The debtor then operated two discount supermarkets in San Diego County, employing members of Local 1222 of the Retail Clerks International Union, AFL–CIO ("union"). On June 22, 1981, in an effort to reduce operating expenses, Mr. Bernard Rivkin, the debtor's secretary-treasurer, sent a mailgram to the union informing it that the debtor, as debtor-in-possession, had decided to "cancel" the collective bargaining agreement ("agreement"), that they were operating under. On July 31, 1981, the debtor filed a formal application to reject the agreement. Thereafter, on August 14, 1981, the debtor gave notice to the union that a hearing would be held before this Court on August 28, 1981, concerning the application to reject.

On August 28, 1981, the debtor converted this case to a Chapter 7 proceeding pursuant to 11 U.S.C. § 1112. The union and the debtor stipulated that the hearing on the motion to reject the agreement would be continued.

On September 2, 1981, Mr. Ralph O. Boldt was appointed to serve as the bankruptcy trustee, charged with liquidating this es-

tate. Thereafter, the parties submitted memorandums of law on the questions presented. The matter was finally heard before this Court on January 29, 1982. This memorandum opinion is filed to announce this Court's rulings on the application.

### II

### DISCUSSION

The trustee argues that the debtor's decision to reject the agreement be upheld by this Court and an order be issued recognizing that this rejection occurred as of June 22, 1981, the date on which Mr. Rivkin sent the mailgram notifying the union of the debtor's unilateral decision to reject the agreement. In this, the trustee suggests that, under the Code, the standard governing the rejection of collective bargaining agreements should be the same as that applied to motions to reject other executory contracts. Further, the trustee urges this Court to declare that any amounts due to the union for work performed during these proceedings should be accorded fourth priority treatment under Section 507(a)(4). 11 U.S.C. § 507(a)(4) (Priorities).

Naturally, the union contests each of these points. The union claims that a motion to reject a collective bargaining agreement should be considered under the special rules that had developed to consider such motions under the Bankruptcy Act ("Act"), the predecessor statute to the Code. The union also argues that even if rejected, the agreement would remain fully in effect until the filing of a formal court order. As to the nature of any claim the union, or its members, may have for any work performed since the Chapter 11 petition was filed, the union urges this Court to accord such claims the highest level of priority under Section 507.

■ It is generally understood that the Code empowers bankruptcy courts to allow a debtor-in-possession to reject disadvanta-

---

1. The Code, or Bankruptcy Reform Act of 1978, became effective on October 1, 1979, and governs all cases filed after that date. *See Central*

*Trust Co. v. Official Creditors' Comm.*, U.S. ——, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982).

geous executory contracts. Becker, *The Bankruptcy Law's Effect on Collective Bargaining Agreements*, 81 Col.L.Rev. 391, 393 (1981) ("Becker"). In corporate reorganizations under the Act, a debtor-in-possession was vested with all the powers of a Chapter X trustee. Section 188 of the Act. A Chapter X trustee, in turn, was accorded the same powers as a bankruptcy trustee in a liquidation case, except where inconsistent with provisions of Chapter X. *See* Section 187 of the Act; *Wolf v. Weinstein*, 372 U.S. 633, 649, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1963); *Gochenour v. Cleveland Terminals Bldg. Co.*, 118 F.2d 89, 93 (6th Cir. 1941).

Under the Code, the source of the powers of a debtor-in-possession are not so easily tracked. Section 1107(a) acts to give a debtor-in-possession all the rights and powers of a Chapter 11 trustee. 124 Cong.Rec. 32405 (1978). *See In re Munsey Corp.*, 10 B.R. 864, 866 (E.Pa.1981). Now, reference to Section 1106(a), which details the duties of a Chapter 11 trustee, reveals that such a trustee is not given all the powers of a liquidation trustee elected under Chapter 7. Instead, a Chapter 11 trustee is given six specific reorganization duties [2] and incorporates, by reference to Section 704, five duties of a trustee in a liquidation case. *See* 5 *Collier on Bankruptcy*, ¶ 1106.01[3] at 1106–9 (15th ed.) ("15th ed."). None of the powers specified would appear, on their face, to include actions dealing with the assumption or rejection of executory contracts. It appears that this power is derived from Section 103, which makes clear that the provisions of the first three chapters of the Code apply equally in Chapter 11 and Chapter 7 cases. H.R.Rep.No.595, 95th Cong., 1st Sess. 404 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The effect of this provision is to make Section 365, which is the Code section dealing with executory contracts, applicable to reorganization cases. This is confirmed by the language of Section 365 itself, which refers to actions to assume or reject executory contracts by a Chapter 11 trustee. 11 U.S.C. § 365(d)(2). *See In re Alexander*, 670 F.2d 885 (9th Cir., 1982) (Chapter 13 case).

■ Under Section 365(a), a "trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). This provision was enacted, pursuant to the grant of power ceded to Congress under the U.S. Constitution, allowing the enactment of laws, under the Bankruptcy Clause, which impair the obligations of contract. *See Railway Labor Executives' Assn. v. Gibbons*, —— U.S. ——, ——, 102 S.Ct. 1169, 1174, 71 L.Ed.2d 335 (1982). Here, the debtor-in-possession made application to reject a collective bargaining agreement. This runs counter to the well established federal labor policy, expressed in both statutes and judicial decisions, strongly favoring collective bargaining and the specific enforcement of collective bargaining agreements. *Carpenters Local Union No. 2746 v. Turney Wood Products, Inc.*, 289 F.Supp. 143, 148 (W.Ark.1968); *Designers' Guild of Ladies' Apparel, Local 30, Intern. Ladies Garment Workers' Union v. Hers Apparel Industries, Inc.*, 1 B.C.D. 753, 755 (S.D.N.Y.1975). Under the National Labor Relations Act, an employer's unilateral termination of a collective bargaining agreement constitutes an unfair labor practice. *Note, The Labor-Bankruptcy Conflict: Rejection of a Debtor's Collective Bargaining Agreement*, 80 Mich.L.Rev. 134, 136 (Nov.1981) ("Note"). Other courts have allowed debtors-in-possession to reject collective bargaining agreements, but scrutinize such proposed rejections more closely than rejections of other types of executory contracts. *Id.*[3] The rationale behind these

---

**2.** Not all of these are required duties of a debtor-in-possession. *See* 11 U.S.C. § 1107(a).

**3.** *See Shopmen's Loc. U. No. 455, Etc. v. Kevin Steel Prod., Inc.*, 519 F.2d 698 (2d Cir. 1975); *In re Overseas National Airways, Inc.*, 238 F.Supp. 359 (E.D.N.Y.1965); *Matter of Alan*

*Wood Steel Co.*, 449 F.Supp. 165 (E.Pa.1978); *In re Brada Miller Freight Systems, Inc.*, 16 B.R. 1002, 8 B.C.D. 727 (D.C., N.D.Ala.1981); *Matter of Allied Technology, Inc.*, 8 B.R. 366 (Bkrtcy., S.Ohio 1980) (Code case); Hughes, *"Wavering Between the Profit and the Loss": Operating a Business During Reorganization*

decisions, which face the problem of accommodating the conflicting provisions of the labor and bankruptcy laws, is that these decisions:

> have given full effect to the reorganization provisions of the bankruptcy law whenever they were necessary to guarantee the continued existence of a debtor in possession on the ground that the liquidation of a business, with its attendant loss of jobs, does not promote the purposes of the labor laws. Rigid enforcement of the bankruptcy laws, however, may subvert the policies of the labor laws. Consequently, courts have generally implemented the bankruptcy provisions in a manner that gives effect to the underlying purposes of the labor laws to the greatest extent possible.

*Becker, supra,* 81 Col.L.Rev. at 395.

■ Under the Act, the courts were directed to move cautiously in allowing rejection of collective bargaining agreements. *Truck Drivers Local U. No. 807 v. Bohack Corp.,* 541 F.2d 312, 320 (2d Cir. 1976). In the leading authority, the Second Circuit Court of Appeals said that the bankruptcy courts should take into consideration the interests of the employees as well as the possible benefit to the debtor, with rejection only being allowed after a balancing of the equities on both sides and should not be allowed simply because rejection would tend to improve the financial condition of the debtor. *Shopmen's Loc. U. No. 455, Etc. v. Kevin Steel Prod., Inc., supra,* 519 F.2d at 706–07. *See 2 Colliers, 15th ed., supra,* ¶ 365.03 at 365–16, 17; *Local Joint Executive Bd., Etc. v. Hotel Circle, Inc.,* 613 F.2d 210, 213–4 (9th Cir. 1980). Several courts have adopted the two-step approach announced in *Kevin Steel* in cases filed under the Code. *See In re Brada Miller Freight Systems, Inc., supra,* 16 B.R. at 1014, 8 B.C.D. at 836; *Matter of David A. Rosow, Inc.,* 9 B.R. 190, 191 (Bkrtcy., Conn.

1981). The Second Circuit appears to have based its decision in *Kevin Steel* on its conclusion that the debtor-in-possession is the successor to the pre-bankruptcy company, and as such, is not bound by the preexisting labor agreement, but is required to bargain with union representatives. 519 F.2d at 704. *See Matter of Allied Supermarkets, Inc.,* 6 B.R. 968, 974 (D.C., E.D. Mich.1980). This new entity theory has been criticized for it creates the paradoxical situation that the debtor in possession is cast as a new employer, apparently not bound by preexisting executory contracts and yet, it must make an appropriate showing to *reject* such agreements, including satisfying the higher standard imposed when dealing with applications to reject collective bargaining contracts. *See Matter of Ryan Company, Inc.,* 4 B.C.D. 64, 65 (Conn.1978); *Note, supra,* 80 Mich.L.Rev. at 148.[4] It appears that *Kevin Steel* reached the correct result, but it was unnecessary to base its conclusion on the doubtful concept of declaring the debtor-in-possession a successor entity. Instead, the same result could be achieved by recognizing that the bankruptcy courts, acting as a court of equity, have wide discretion on applications to assume or reject executory contracts. *See King v. Baer,* 482 F.2d 552, 557 (10th Cir. 1973) (Chapter X case under Act). *Contrast, In re Alexander, supra,* 670 F.2d 888, 889 (Court has no discretion to bar rejection of executory contract where action is part of confirmed Chapter 13 plan). Given the competing interests found in the conflict between federal labor law and the Code, it would require the courts to exercise this discretion in much the same manner as found in *Kevin Steel* and those cases which have followed that authority. In providing a higher standard for judging applications to reject collective bargaining agreements, we recognized the realities of the situation.

---

*Under Chapter 11 of the New Bankruptcy Code,* 54 Am.Bankr.L.J. 45, 84 (Winter 1980) ("Hughes").

**4.** In an Act case, our own Ninth Circuit Court of Appeals found the successorship analogy to be helpful, but did not address "whether the

bankruptcy court should apply a stricter standard for authorizing the rejection of collective bargaining agreements...." *Local Joint Executive Bd., Etc. v. Hotel Circle, supra,* 613 F.2d at 213 14 n.2.

The premature rejection of such a contract, without just cause, may result in retaliatory strikes by affected workers. *See Hughes, supra*, 54 Am.Bankr.L.J. at 86. This possibility will surely act to limit such applications to the foolhardy and the desperate. *See Shopmen's Loc. U. No. 455, Etc. v. Kevin Steel Prod., Inc., supra* 519 F.2d at 703; *Truck Drivers Local U. No. 807 v. Bohack Corp., supra*, 541 F.2d at 318. Thus, in all but the most extreme cases, the debtors-in-possession, or Chapter 11 trustees, should be required to move cautiously and bargain in good faith with their unions, in an attempt to foster a cooperative attitude in working towards a successful reorganization. This attempt at renegotiation should occur before coming before the court to achieve a unilateral rejection.[5] Obviously, in cases where the survival of the business itself is at stake, the urgent need to reject will require immediate action. In such cases, the required bargaining process will, by necessity, be kept to a minimum.

Here, of course, the debtor-in-possession apparently made no attempt to renegotiate the collective bargaining agreement. Instead, it attempted a unilateral rejection and the trustee now urges this Court to approve that action, retroactively, as of June 22, 1981.

The parties appear to agree with the general principle that under Section 365 of the Code, the decision to assume, or reject, an executory contract is "subject to the court's approval." 11 U.S.C. § 365(a). *See 2 Collier, 15th ed., supra*, ¶ 365.03 at 365–13, 21–22. However, they disagree on the manner and timing of the court's supervision in this area. In this, we must draw a distinction between cases in Chapter 7 and those in Chapter 11.

In Chapter 7 cases, the trustee is charged to collect, and reduce to money, the property of the estate and to expeditiously close the estate. 11 U.S.C. § 704(1). Given these objectives, and the limited resources available to provide adequate assurance to cure defaults, provide compensation and assure future performance, as required under Section 365(b)(1), most executory contracts will be rejected by Chapter 7 trustees. *See In re Childs Co.*, 64 F.Supp. 282, 286 (S.N.Y. 1944). If Chapter 7 trustees had to present these numerous determinations to reject such contracts to the courts, it would undoubtedly create a considerable administrative burden. Congress apparently recognized this potential problem in enacting Section 365(d)(1), which vests the decision regarding rejection of executory contracts solely in the Chapter 7 trustee, for a sixty-day period. *In re Standard Furniture Co.*, 3 B.R. 527, 530, 6 B.C.D. 270, 272 (Bkrtcy., S.Cal.1980).[6] *See 13 Collier on Bankruptcy*, ¶ 607.06[2] at 6–93 (14th ed.). If the Chapter 7 trustee does not indicate an intention to assume the contract during the sixty-day period, then the contract is automatically deemed rejected. 11 U.S.C. § 365(d)(1). However, given the possible drain on the estate in assuming an executory contract, assumptions must be formally presented to the court for approval. In this, as long as the Chapter 7 trustee has acted within the sixty-day limitation imposed by Section 365(d)(1), then the court may act outside that time. *See In re Avery Arnold Const., Inc.*, 11 B.R. 34, 35 (Bkrtcy., S.Fla.1981).

In Chapter 11 cases, the Code has not established any time frame within which a debtor-in-possession, or Chapter 11 trustee, must act in regard to executory contracts.[7] Since there is no automatic as-

---

5. Where the employees are represented by collective bargaining representatives, the debtor-in-possession should give reasonable notice of its proposed terms and needs, and then negotiate in good faith, but the debtor-in-possession would not have to follow any procedures established under the applicable labor laws before making an application to reject in the bankruptcy court. *See Brotherhood of Railway,* *Etc. v. REA Express, Inc.*, 523 F.2d 164, 171 (2d Cir. 1975).

6. *See also* Proposed Bankruptcy Rule 6006, suggested by the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States in March of 1982.

7. Under Section 365(d)(2), these contracts may be assumed or rejected at any time before the confirmation of a plan of reorganization but, a

sumption or rejection in a Chapter 11 proceeding, then any action must be presented for court approval. *See 2 Collier, 15th ed., supra,* ¶ 365.03 at 365–13, 21–22. This is in accord with the prior practice under the Act. *See Loc. Joint Exec. Bd., AFL–CIO v. Hotel Circle, Inc.,* 419 F.Supp. 778, 787–89 (S.Cal.1976), *aff'd,* 613 F.2d at 216. This requirement of court review of the contemplated action is particularly apropos when dealing with collective bargaining agreements. For in these cases the courts must be satisfied, under the balancing test stated above, that the interests of the employees, as well as the interests of the debtor, have been fully considered before allowing rejection.

■ The parties have expressed great concern over the effective date to be ascribed to any rejection of the contract. In this, their anxiety is misplaced, for the Code provides the directions necessary to handle the rejection of executory contracts. Where the contract has not been previously assumed, under Section 365(g)(1) rejection is treated as a breach of the contract occurring immediately before the date of the filing of the petition. 11 U.S.C. § 365(g)(1). *See In re Record Co., Inc.,* 8 B.R. 57, 60 (Bkrtcy., S.Ind.1981); *In re LaBonte,* 13 B.R. 887, 893 (Bkrtcy., Kan.1981).[8] Any claim for damages stemming from the rejection is treated under Section 502(g) as a pre-petition claim. 11 U.S.C. § 502(g). See 3 *Collier, 15th ed., supra,* ¶ 502.07 at 502–87, 88. Of course, an entity which provides services during the reorganization period is entitled to compensation based on the fair market value of the services provided to the estate. *See* 11 U.S.C. § 503; *Becker, supra,* 81 Col.L.Rev. at 393; *In re Standard Furniture Co., supra,* 3 B.R. at 530, 6 B.C.D. at 271; *Matter of Schatz Federal Bearings Co., Inc.,* 5 B.R. 549, 553, 556, 6 B.C.D. 749, 752–53 (Bkrtcy., S.N.Y.1980) (Collective

Bargaining Agreement assumed in Chapter 11 proceeding). Here, the Chapter 11 proceeding was converted to a Chapter 7 case. Thereafter, the trustee made clear his decision to reject the subject contract and, of course, the sixty days designated in Section 365(d)(1) have long since passed. The collective bargaining agreement is, therefore, deemed as rejected immediately before June 16, 1981.[9]

For any services provided during the reorganization, the employees, here, are entitled to fair compensation. If they have not been fairly treated, or if any benefits they earned remain unpaid, then they may have a claim against the estate which would be accorded first priority treatment under Section 507(a)(1), as a cost of administration. 11 U.S.C. § 507(a)(1). *See Becker, supra,* 81 Col.L.Rev. at 394; *In re Capital Service,* 136 F.Supp. 430, 438 (S.Cal.1955) (Carter, J.). However, administrative expenses incurred in the Chapter 7 case, after the conversion from Chapter 11, will have priority over any costs of administration attributed to the Chapter 11 reorganization proceeding. 11 U.S.C. § 726(b). *See 1A Bkr-L.Ed. Summary: Administration, supra,* § 6:193 at 300; *4 Bkr-L.Ed., Code Commentary and Analysis: Collection and Distribution,* § 32:27 at 40–41.

### III

### CONCLUSIONS

■ 1. In a Chapter 11 case, the rejection of an executory contract requires approval by the court under 11 U.S.C. § 365(a).

2. When dealing with a collective bargaining agreement, the court should take into consideration the interests of the employees, as well as those of the debtor before allowing rejection.

---

party to the contract may petition the court to order that action be taken within a specified period of time. 11 U.S.C. § 365(d)(2).

8. This also is in accord with the practice under the Act. *See Matter of J. Bain, Inc.,* 554 F.2d 255, 256 (5th Cir. 1977).

9. In cases where the contract had been previously assumed under court direction, the effective date will be either the date of rejection, or immediately prior to any conversion of the case, depending on the sequence of events. *See 1A Bkr-L.Ed. Summary: Administration,* § 6:193 at 299–300.

3. After conversion to a Chapter 7 case, the trustee has sole discretion regarding the rejection of executory contracts and all such contracts are deemed rejected if the trustee does not act within sixty days of the conversion. 11 U.S.C. § 365(d)(1).

4. Here, the agreement was rejected in the Chapter 7 proceedings.

5. The agreement is deemed rejected immediately before June 16, 1981, the date the petition in this case was filed. 11 U.S.C. §§ 365(g)(1), 502(g).

6. Any claim for unpaid benefits accruing during the reorganization will be entitled to priority under 11 U.S.C. § 507(a)(1).

7. The payment of the costs of administration of the liquidation proceeding, under Chapter 7, will receive priority over any unpaid administrative expenses incurred under the Chapter 11 reorganization effort. 11 U.S.C. § 726(b).

This opinion will constitute findings of fact and conclusions of law under Bankruptcy Rule 752.