In re **VISCOUNT FURNITURE CORPORATION.**

**Bankruptcy No. 88–22446.**

United States Bankruptcy Court, N.D. Mississippi.

July 31, 1991.

James P. Mozingo, Stennett, Wilkinson and Ward, James Knight, Knight and Knight, Jackson, Miss., for Viscount Furniture Corporation.

R. Michael Bolen, Senior Atty. for U.S. Trustee William Baity, Jackson, Miss., for Office of U.S. Trustee.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court are the applications for compensation and reimbursement of expenses filed by the law firms of Stennett, Wilkinson and Ward and Knight and Knight, P.A.; objections to said applications, as well as, a motion for the disgorgement of retainers filed by the Office of the United States Trustee; and the court having heard and considered same hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

### II.

The law firms of Stennett, Wilkinson, and Ward and Knight and Knight were employed by the debtor on November 25, 1988. Stennett, Wilkinson, and Ward received a retainer in the sum of $13,000.00, and Knight and Knight received a retainer in the sum of $7,500.00. The debtor filed its voluntary Chapter 11 bankruptcy case on December 2, 1988, and the two law firms filed their disclosures of compensation pursuant to 11 U.S.C. § 329, setting forth their respective retainers. The bankruptcy case was converted from Chapter 11 to Chapter 7 on September 12, 1989.

As a result of a motion filed by the U.S. Trustee to compel compliance with a previous order of this court, the law firms filed their applications for compensation and reimbursement of expenses. The application of Stennett, Wilkinson, and Ward was filed on August 16, 1990, and requested the following:

| | |
|---|---|
| Attorneys' fees | $16,990.00 |
| Expenses | 3,429.80 |
| Total | $20,419.80 |

The application of Knight and Knight was filed on March 25, 1991, and requested the following:

| | |
|---|---|
| Attorneys' fees | $8,567.50 |
| Expenses | 122.68 |
| Total | $8,690.18 |

The U.S. Trustee filed an objection to the aforesaid fee applications, alleging among other things that the employment of the law firms to represent the debtor had never been approved by the court. The U.S. Trustee also filed a motion requesting the court to order the disgorgement of the retainers which had been previously paid to the law firms.

Responding to the objections, on March 25, 1991, the law firms filed a joint motion requesting the court to approve their employment to represent the debtor, nunc pro tunc, November 25, 1988. Since there was no objection to this motion and in reliance on *Matter of Triangle Chemical's Inc.,* 697 F.2d 1280 (5th Cir.1983), the court entered an order approving the employment on June 25, 1991.

### III.

The primary purpose of a fee application is to provide the court with sufficient information to enable it to determine whether the services rendered were reasonable, actual, and necessary. *In re Chicago Lutheran Hosp. Ass'n,* 89 B.R. 719 (Bankr. N.D.Ill.1988); *Matter of Pothoven,* 84 B.R. 579 (Bankr.S.D.Iowa 1988); *In re S.T.N. Enterprises, Inc.,* 70 B.R. 823 (Bankr.D.Vt. 1987); *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557 (Bankr.D.Utah 1985).

The bankruptcy court has an independent duty to review and examine applications for compensation even in the absence of objections.

A review of a fee application "begins with a determination of the accuracy of the arithmetic and proceeds to an evaluation of whether services are sufficiently identified and explained." *In re First Software Corp.,* 79 B.R. 108, 111 (Bankr. D.Mass.1987). A fee application must con-

tain a "detailed statement of ... the services rendered, time expended, expenses incurred and ... the amounts requested." *See,* Rule 2016(a), Federal Rules of Bankruptcy Procedure. At a minimum, the fee application must indicate the purpose of the services rendered, as well as, how the services benefited the bankruptcy estate.

The Fifth Circuit decision, *Matter of First Colonial. Corp. of America,* 544 F.2d 1291 (5th Cir.1977), *cert. denied* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1979), sets forth a three-step procedure to be employed by the court when determining the reasonableness of a fee application, to-wit:

> Determining a reasonable attorneys fee is a three-step process. In the first phase, the bankruptcy judge or district court must ascertain the nature and extent of the services supplied by the attorney ... once the nature and extent of the services rendered have been determined, the bankruptcy judge must assess the value of those services ... when both of these steps have been completed, and the amount of compensation that is reasonable has been determined, the bankruptcy judge must briefly explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors listed in *Johnson*[1] affected his decision.

*Id.* at 1229.

In subsequent decisions, *Hensely v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court indicated that the *Johnson* factors do not have to be separately analyzed, particularly if they are not relevant. *See also, Brantley v. Surles,* 804 F.2d 321 (5th Cir.1986).

The court in *In re Sly,* 77 B.R. 115 (Bankr.N.D.Ohio 1986) indicated that first the reasonable time expended should be multiplied by a reasonable hourly rate and, then the court, within its discretion, should independently consider the *Johnson* factors.

The court has carefully reviewed the fee applications submitted by both law firms and would make the following observations:

*Stennett, Wilkinson, and Ward:*

■ The court finds no fault with the hourly rates requested by this law firm. The court, however, is of the opinion that the number of hours billed are excessive when compared to the ultimate results achieved, i.e., the failure of the Chapter 11 debtor to reorganize. Several hours billed for paralegal time should be allocated to general office overhead. As such, certain reductions are in order and the court will approve compensation for this firm as follows:

| | | |
|---|---|---:|
| James R. Mozingo | — 90 hrs. @ $110.00 per hour | $ 9,900.00 |
| Sylvia J. Burnham | — 80.5 hrs. @ $35.00 per hour | 2,817.50 |
| James C. Martin | — 4.6 hrs. @ $65.00 per hour | 302.00 |
| Stacey Lea Smith | — 3.0 hrs. @ $35.00 per hour | 105.00 |
| Richard C. Bradley, III | — 19.1 hrs. @ $100.00 per hour | 1,910.00 |
| Total Attorneys' Fees Allowed | | $15,034.50 |
| Expenses Allowed | | 3,429.80 |
| Total Award Approved | | $18,464.30 |

---

1. The twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill necessary to properly perform the legal services; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fees charged; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the court or the client; (8) the amount of money involved in the case and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) fees awarded in similar cases.

*Knight and Knight, P.A.:*

■ The fee application submitted by this firm is deficient in several respects. There are numerous conferences listed with Robert Draga, a former officer of the debtor, and James Mozingo, an attorney formerly affiliated with Stennett, Wilkinson, and Ward. The underlying purposes of these conferences are not disclosed and are therefore unknown. The court can only speculate as to the actual value of the time expended. Other conferences, which were related to attorney compensation issues, consumed excessive hours considering the subject matter being discussed. There is no indication whatsoever as to how the services benefitted the debtor or the bankruptcy estate. As such, certain reductions are in order and the court will approve compensation for this firm as follows:

| | |
|---|---|
| James P. Knight, Jr.—35 hrs. @ $150.00 per hour | $5,250.00 |
| James T. Knight—3 hrs. @ $115.00 per hour | 445.00 |
| John D. Thomas, Jr.—10 hrs. @ $75.00 per hour | 750.00[2] |
| Total Attorneys' Fees | $6,445.00 |
| Expenses | 122.68[3] |
| Total Compensation Allowed | $6,567.68 |

---

Now that the amounts of compensation have been approved, the court must decide how these fees and expenses can be paid, particularly since the bankruptcy case has been converted to Chapter 7 subsequent to the time that most of the compensation was earned.

### IV.

■ The first issue that must be resolved is the status of the retainers paid to the law firms. Judge Eugene R. Wedoff in *In re McDonald Bros. Const., Inc.,* 114 B.R. 989 (Bankr.N.D.Ill.1990), presented a thorough analysis of three types of retainers. Excerpts from his opinion are set forth as follows:

a. *"Classic" Retainers:*

... a "classic 'retainer fee' arrangement" is one in which a "sum of money [is] paid by a client to secure an attorney's availability over a period of time," so that "the attorney is entitled to the money regardless of whether he actually performs any services for the client."
...

Classic retainers have been explained both as payment "to bind the attorney from representing another" and simply as payment "for accepting the case." ... Whatever the explanation, however, an essential characteristic of the classic retainer is that it is entirely earned by the attorney upon payment, with the client retaining no interest in the funds.

... To the extent that a classic retainer is paid to a bankruptcy attorney prepetition, the attorney only disclosed the payment pursuant to § 329 of the Code. Because the debtor holds no interest in a classic retainer, it does not become part of the estate and no fee application is required before the attorneys use the retainer funds.

b. *"Security" Retainers:*

[This] ... type of retainer agreement between debtors and their attorneys provides that the retainer will be held by the attorneys to secure payment of fees for future services that the attorneys are expected to render. Under such a "se-

**2.** This allowed compensation was earned more than fifteen months after the law firm had obtained its retainer. As such, because of the Mississippi Statute of Frauds, which will be discussed subsequently, this compensation is not secured by the retainer.

**3.** $58.75 of these allowed expenses were incurred more than fifteen months after the law firm had obtained its retainer. Also because of the Statute of Frauds, these expenses, i.e., $58.75, are not secured by the retainer.

curity retainer," the money given to the debtor's attorneys is not present payment for the future services. Rather, the retainer remains the property of the debtor until the attorney "applies" it to charges for services actually rendered; *any unearned funds are turned over by the attorneys.* This type of retainer is recommended in *Burnstein, Collier Bankruptcy Compensation Guide,* Para. 2.03 at 2–13 (1989):

> [T]he agreement should provide that: (1) the retainer is deemed a trust fund, subject to deposit in the firm's client account ...; (2) any interest accrual on the retainer amount are added to the retainer; (3) the firm has a right to apply against the retainer amount all accrued time charges and reimbursable costs at a monthly basis upon the submission to the client of detailed statements of such time charges and reimbursable costs ...; and (4) if either of the client or the firm notifies the other party in writing of its decision to terminate the agreement, the balance of the retainer amount may be applied to all accrued but unpaid charges ... and any remainder will be returned ...

c. *"Advance" Payment Retainers:*

... [Is] one in which the debtor pays, in advance for some or all of the services that the debtor is expected to perform on the debtor's behalf. This type of retainer differs from the security retainer in that ownership of the retainer is intended to pass to the attorney at the time of payment, in exchange for the commitment to provide the legal services.

*Id.* at pages 997–1000.

The comment to Rule 1.5 of the Mississippi Rules of Professional Conduct, which specifically deals with fees, allows an attorney to require advance payment of a fee.

However, this comment, read in conjunction with Rule 1.16(d), also requires the attorney to return any unearned portion of the advance payment to the client. The two Rules make no distinction between a retainer and a fee paid in advance. Correlating the two Rules of Professional Conduct with the analysis of the three types of retainers found in *In re McDonald,* leads this court to the conclusion that a "security retainer" is permissible in the State of Mississippi.

## V.

A "security retainer" is established when the attorney receives and holds the client's money as a pledge, in the form of a possessory security interest, that the attorney's fees will be paid when earned.

The Uniform Commercial Code expressly allows a possessory security interest in money. Subject to the applicability of the Mississippi Statute of Frauds, security agreements related to collateral in the possession of the secured party are not required to be in writing. *See,* § 75–9–203(1)(a), Miss.Code Ann. A financing statement is not required to be filed since a security interest in money can only be perfected by possession. *See,* § 75–9–305, Miss.Code Ann. *See also, In re McDonald,* 114 B.R. at 999.

Although no written employment contracts between the two law firms and the debtor have been produced, the court is of the opinion that, subject to the two issues which will be addressed below, the payment and retention of the respective retainers without further action created security agreements and valid security interests in favor of the law firms in the retainers. Each requirement set forth in § 75–9–203(1)(a), (b), and (c), Miss.Code Ann.[4], has

**4.** § 75–9–203. Attachment and enforceability of security interest; proceeds; formal requisites.

(1) Subject to the provisions of section 75–4–208 on the security interest of a collecting bank and section 75–9–113 on a security interest arising under the chapter on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and, in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

been met. Perfection of the security interests was achieved by the law firms' continuous possession of the debtor's funds. These conclusions, however, must be tempered by two factors, i.e., (1) the Mississippi Statute of Frauds, and (2) the amounts of compensation actually allowed by the court.

The general Statute of Frauds in Mississippi, codified as § 15-3-1, Miss.Code Ann., is the first of these factors and is set forth as follows:

> An action shall not be brought whereby to charge a defendant or other party:
>
> (a) upon any special promise to answer for the debt or default or miscarriage of another person;
>
> (b) upon any agreement made upon consideration of marriage, mutual promises to marry excepted;
>
> (c) upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year;
>
> (d) upon any agreement which is not to be performed within the space of fifteen months from the making thereof; or
>
> (e) upon any special promise by an executor or administrator to answer any debt or damage out of his own estate; unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.

There is no Mississippi Uniform Commercial Code section, relating to secured transactions, that displaces the aforesaid general Statute of Frauds. Therefore, pursuant to § 75-1-103, Miss.Code Ann.[5], the Statute of Frauds must be considered as supplementing the Mississippi Uniform Commercial Code. From the court's viewpoint, there is no inconsistency between these statutes. Therefore, the Statute of Frauds obviously cannot be ignored.

The retainer obtained by Stennett, Wilkinson, and Ward in the instant proceeding does not violate or conflict with the Statute of Frauds because all of the attorneys' services were performed and the expenses incurred within fifteen months from the date that the retainer was paid. Had the services been performed beyond the fifteen month period, the Statute of Frauds would likely nullify, in part, the secured status enjoyed by this firm.

Parts of the attorneys' fees and expenses (footnotes 2 and 3, hereinabove), allowed by the court as compensation for Knight and Knight, were earned and incurred more than fifteen months after this law firm had obtained its retainer. Therefore, because of the applicability of the Statute of Frauds, these items totaling $808.75 ($750.00 in attorney fees and $58.75 in expenses), cannot be considered as secured by the retainer.

The second factor concerns the extent of the security interests which is limited to the fees actually earned, i.e., those approved herein by the court. *In re Burnside Steel Foundry Co.*, 90 B.R. 942, 945 n.

(b) value has been given; and

(c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

(3) Unless otherwise agreed, a security agreement gives the secured party the rights to proceeds provided by section 75-9-306.

(4) A transaction, although subject to this chapter, is also subject to sections 75-67-101 through 75-67-135, sections 75-67-201 through 75-67-243, sections 75-67-1 through 75-67-39, and sections 63-19-1 through 63-19-55, and in the case of conflict between the provisions of this chapter and any such statute, the provisions of such statute control. Failure to comply with any applicable statute has only the effect which is specified therein.

**5.** § 75-1-103. Supplementary general principles of law applicable.

Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

1 (Bankr.N.D.Ill.1988) speaks to this point as follows:

> [I]f the retainer is of the security type ..., ownership of the retainer remains in the debtor even after the petition is filed ... Thus, on the filing of the petition, the security retainer becomes property of the estate under 11 U.S.C. § 541(a)(1) ... In such a case, the right to keep the retainer ultimately turns on the *filing and approval of a fee application under section 330 of the Code.* (emphasis added)

■ Although the funds comprising the retainers are considered still to be the property of the debtor's estate, the law firms' security interests in the retainers extend to the respective amounts approved by the court as allowed claims. In this case, the compensation approved for the law firm of Stennett, Wilkinson, and Ward, i.e., $18,464.30, is secured to the extent of its retainer in the sum of $13,000.00. The compensation approved for Knight and Knight, i.e., $6,567.68, is secured to the extent of $5,758.93 [$6,567.68 − ($750.00 + $58.75)]. The balance of the Knight and Knight retainer must be refunded to the bankruptcy estate as set forth hereinbelow.

### VI.

Without the retainers, the fees and expenses approved for Stennett, Wilkinson, and Ward and Knight and Knight would ordinarily be classified as Chapter 11 administrative expense claims as contemplated by 11 U.S.C. § 503(b). Since the bankruptcy case was subsequently converted to a Chapter 7 liquidation, 11 U.S.C. § 726(b), which provides the following, must be considered, to-wit:

> (b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), or (6) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been *converted to this chapter under section 1112 or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.* (emphasis added)

The court in *In re Rittenhouse*, 76 B.R. 610 (Bankr.S.D.Ohio 1987), held that § 726(b) provides a post conversion priority to Chapter 7 administrative expenses over the priority position of Chapter 11 administrative expenses. The court offered the following comment:

> ... It is well recognized that when a Chapter 11 case has been converted to a Chapter 7 case, Chapter 7 administrative expenses are entitled to a priority for the so called "burial expenses" to provide an incentive to encourage capable trustees and professionals to act in superseding cases. *In re Codesco, Inc.,* 18 B.R. 225, 227 (Bankr.S.D.N.Y.1982). *See also, In re Price Chopper Supermarkets, Inc.,* 19 B.R. 462 (Bankr.S.D.Cal.1982); *In re Blanton–Smith Corp.,* 44 B.R. 73 (Bankr.M.D.Tenn.1984); *In re Kaleidoscope of High Point, Inc.,* 56 B.R. 562 (Bankr.M.D.N.C.1986).

*Id.* at p. 611.

Moreover, other courts in construing § 726(b) have afforded Chapter 7 administrative expenses "super priority" status over the administrative expenses of a preceding Chapter 11 case. *See, In re Manchester Hides, Inc.,* 32 B.R. 629, 630 n. 2 (Bankr.N.D.Iowa 1983); *In re New England Carpet Co.,* 28 B.R. 766, 770 (Bankr.D.Vt.1983); *In re Charlie Altman Pontiac–Cadillac–GMC, Inc.,* 23 B.R. 50, 51 (Bankr.N.D.Ala.1982); *In re Price Chopper Supermarkets, Inc.,* 19 B.R. 462, 467 (Bankr.S.D.Cal.1982); *In re Chugiak Boat Works, Inc.,* 18 B.R. 292, 296 n. 6 (Bankr.D.Alaska 1982).

■ In the absence of the retainers paid to the law firms, the attorneys' fees and expenses allowed by the court, since most are clearly Chapter 11 administrative expenses, would be subordinated to all of the Chapter 7 administrative expenses that

have accrued and may continue to accrue post-conversion.

■ Insofar as Knight and Knight is concerned, the $750.00 in attorneys' fees and the $58.75 in expenses were earned and incurred after this bankruptcy case was converted to Chapter 7. As such, although these items of compensation do not enjoy a secured status via the retainer, they may be treated as Chapter 7 administrative expense claims where they will enjoy a higher priority than if they were considered only as Chapter 11 administrative expense claims.

### VII.

Because the law firms did obtain prepetition retainers, the effective conclusion concerning the payment of their allowed compensation is set forth as follows:

Stennett, Wilkinson, and Ward may immediately apply its retainer of $13,000.00 against its allowed claim of $18,464.30. The balance of the claim in the sum of $5,464.30 is to be treated by the Chapter 7 trustee as a Chapter 11 administrative expense claim in his final report and accounting.

Knight and Knight, may immediately apply $5,758.93 of its prepetition retainer in the total sum of $7,500.00 against its allowed claim in the sum of $6,567.68. The balance of the prepetition retainer in the sum of $1,741.07 must be refunded to the Chapter 7 trustee within thirty days of the date of the entry of the order which will be filed contemporaneously with this opinion. The balance of the allowed compensation in the sum of $808.75 is to be treated by the Chapter 7 trustee as a Chapter 7 administrative expense claim in his final report and accounting.