In the Matter of SCHATZ FEDERAL BEARINGS CO., INC., Debtor.

Bankruptcy No. 80 B 20101.

United States Bankruptcy Court, S. D. New York.

Aug. 4, 1980.

See also, Bkrtcy., 5 B.R. 543.

Otterbourg, Steindler, Houston & Rosen, New York City, for debtor; Conrad B. Duberstein and Sarah S. Curley, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for Official Creditors' Committee; Sheldon Lowe, New York City, of counsel.

Claude D. Montgomery, Asst. Gen. Counsel, Detroit, Mich., Craig & Macauley, Bos-

ton, Mass., for UAW; William F. Macauley, Richard P. Campbell and Donald E. Hacker, Jr., Boston, Mass., of counsel.

Lum, Biunno & Tompkins, Newark, N. J., co-counsel to Creditors' Committee; Theodore L. Abeles, Newark, N. J., of counsel.

## HEARING ON DEBTOR'S APPLICATION TO PAY VACATION PAY IN FULL AS AN ADMINISTRATIVE EXPENSE.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Schatz Federal Bearings Co., Inc. filed a petition for relief under Chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1101 et seq., on March 5, 1980, and continues in the operation of its business as a debtor-in-possession in accordance with Code §§ 1107 and 1108. The debtor now seeks an order from this court authorizing it to pay vacation pay to its employees as an administration business expense which became due and owing on July 15, 1980 under a collective bargaining agreement assumed by the debtor after the filing of the petition and extended with court approval on April 11, 1980, to September 5, 1980. The debtor asserts that the vacation pay should be deemed an actual and necessary cost and expense of preserving its estate and that the continued morale of its employees and the operation of its business depend on the payment of an entire year's accrual amounting to $255,528.30 for 310 union employees and $28,472.99 for 40 clerical employees, for a total of $283,997.29. At the hearing on this subject it was established that it was the debtor's practice to treat its non-union employees in the same manner as union employees regarding the payment of vacation pay.

The Official Creditors' Committee, on very short notice of this application, opposes the debtor's motion on the ground that; (a) vacation pay is not entitled to administrative status under Code § 503(b) and, alternatively, (b) in the event the vacation pay is not barred as an administrative expense, there should be paid only that portion of a year's vacation pay as represents services actually performed by employees since March 5, 1980, when this case was commenced.

The Creditors' Committee observes that the debtor's motion is unusual in that the debtor does not have any funds from operations to cover the vacation pay in question. Manufacturers Hanover Trust Company, a secured creditor, has agreed to increase its secured loan for approximately half the vacation expense and to permit the sale of certain real estate owned by the debtor to fund the other half. Such action quite naturally leaves that much less for unsecured creditors and from potential use by the debtor in its operations.

The debtor, based in Poughkeepsie, New York, has for many years been in the business of manufacturing bearings, including those used by the recession-hit automobile industry. It has suffered huge losses, falling sales, loss of major customers and inadequate prior management.

When the Chapter 11 petition was filed on March 5, 1980, there was then in effect a collective bargaining agreement between the debtor and the International Union, United, Automobile, Aerospace and Agricultural Implement Workers of America and its Local 297 (collectively referred to hereinafter as "the Union").

On April 11, 1980, one month after the commencement of this case, the debtor and the Union entered into an extension agreement whereby the debtor and the Union agreed to extend the collective bargaining agreement to September 5, 1980. This court entered an order on April 28, 1980, approving the extension agreement as necessary and in the best interests of the estate within the context of its efforts to effect a financial rehabilitation.

Under Article IV of the collective bargaining agreement, as extended with the approval of this court, the debtor is obligated to pay vacation pay to its employees with at least six months service who are . . . "on the active payroll of the Company on July 15 of any year . . ." or laid off and later recalled after July 15th,

but prior to December 31st of that same year.[1] Thus, an employee with at lest six months service with the debtor who was on the active payroll on July 15, 1980, is entitled to a full year's vacation pay based upon the number of years of service, without regard to service during the bankruptcy proceedings. On the other hand, employees laid off before July 15, 1980, and not recalled before December 31, 1980, will receive no vacation pay at all.

Both the debtor and the Union contend that since the contractual vacation pay obligation makes no provision for payment on an accrual basis, it is another form of compensation to be paid upon the happening of active employment on a date certain, namely July 15th, so that the entire entitlement to vacation pay, similar to severance pay, should be deemed to have come due during the post-petition period and be classified as an administrative expense for all employees on the debtor's active payroll on July 15th, notwithstanding that a number of those employees had been laid off and subsequently recalled prior to July 15th.

## IS VACATION PAY AN ADMINISTRATIVE EXPENSE UNDER CODE § 503?

▆ Prior to the October 1, 1979 commencement of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 et seq., the federal courts followed the decision in *In re Wil-Low Cafeterias, Inc.*, 111 F.2d 429, 432 (2d Cir. 1940) where the court stated, "A vacation with pay is in effect additional wages." See *In re Straus-Duparquet, Inc.*, 386 F.2d 649 (2d Cir. 1967); *U. S. v. Munro-Van Helms Co.*, 243 F.2d 10 (5th Cir. 1957); *In re Public Ledger, Inc.*, 161 F.2d 762 (3d Cir. 1974). Therefore, under Section 62a(1) of the repealed Bankruptcy Act of 1898,[2] vacation pay, as wages, could constitute an actual and necessary cost and expense incurred in the administration of a bankruptcy estate, notwithstanding that the terms wages or vacation pay were not expressly included

---

1.                    VACATIONS

Section 4.1.—Vacation Pay

4.1.1. [Any employee on the active payroll of the Company on July 15 of any year in the contract period] or any employee who has retired on or after January 1 or the estate of any employee who became deceased on or after January 1, of any year in the contract period, [shall be entitled to vacation pay based on years of service in accordance with the following schedule:]

a—Six (6) months or more but less than twelve (12) months—20 hours pay

b—One (1) year or more but less than five (5) years—80 hours pay.

c—Five (5) years or more but less than ten (10) years—100 hours pay.

d—Ten (10) years or more but less than fifteen (15) years—120 hours pay.

e—Fifteen (15) years or more but less than twenty (20) years—140 hours pay.

f—Twenty (20) years or more but less than twenty-five (25) years—160 hours pay.

g—Twenty-five (25) years or more—180 hours pay.

4.1.2. In computing vacation pay an employee or his estate will receive his average weekly earnings, based on the total pay received, for the weeks paid during January, February, and March or his guaranteed rate times the number of hours of vacation pay to which he is entitled, whichever is higher. An employee who does not work during the above thirteen (13) week period shall receive his guaranteed rate times the number of hours of vacation pay to which he is entitled.

4.1.3. "Average weekly earnings" will be computed as follows:

(1) An employee working the full thirteen (13) weeks of not less than forty (40) hours per week, will receive his average weekly earnings based on the total pay received.

(2) An employee who does not work thirteen (13) full forty (40) hour weeks shall have added to each week in which he does not have forty (40) hours of pay, the number of hours necessary to result in forty (40) hours pay, times his guaranteed hourly rate.

4.1.4. Any employee who is laid off on or after January 1st of any year in the contract period and who returns to work after July 15th but prior to December 31st of that same year, shall, after his return to work, receive vacation pay for that year.

4.1.5. An employee on a leave of absence for a work-connected injury shall receive his vacation pay for a period of three years.

2. Bankruptcy Act § 62a(1). The actual and necessary costs and expenses incurred by officers, other than referees, in the administration of estates shall, except where other provisions are made for their payment, be reported in detail under oath, and examined and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred.

in the definition of allowable administration expenses in Section 62a(1) of the Act. *In re Straus-Duparquet, Inc.; U. S. v. Munro-Van Helms Co.; In re Public Ledger, Inc.,* supra.

The class of expenses which are allowed as administrative expenses in a bankruptcy proceeding is more fully delineated in the Bankruptcy Code as compared to Section 62a(1) of the Act. Code § 503(b)(1)(A) specifies the kinds of administrative expenses that are allowable in a case under the Bankruptcy Code, including:

> "(1)(A) the actual necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case: . . ."

The Creditors' Committee in this case correctly notes that this subsection is derived mainly from Section 64a(1) of the Bankruptcy Act,[3] with some changes. See *House Report* No. 95–595, 95th Cong. 1st Sess. (1977) 355; *Senate Report* No. 95–989, 95th Cong. 2d Sess. (1978) 66, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5852, 6310. The Creditors' Committee also observes that Code § 503(b)(1)(A) and Section 64a(1) of the former Bankruptcy Act speak only in terms of wages and do not expressly state that wages may include vacation pay. This omission is regarded by the Creditors' Committee as particularly significant when contrasted with the third priority status for wages accorded under the Bankruptcy Code in Code § 507(a)(3), where wages, salaries or commissions are further defined to include "vacation, severance and sick leave pay."[4] Predicated on these statutory expressions, the Creditors' Committee concludes that Congress took great care to express its intent to include vacation pay among wages allowable under the third priority and took equal care to express its intent to exclude vacation pay from wages allowable under the first priority.

This court cannot accept the Creditors' Committee reasoning that by failing to further define the term wages in Code § 503(b)(1)(A) so as to include "vacation, severance and sick leave pay", Congress thereby intended to exclude these items from ever obtaining first priority status as an administration expense. To subscribe to such a proposition would require this court to disregard the accumulated case law teaching that vacation pay is additional wages and may constitute an administrative expense if necessarily incurred during the administration of a bankruptcy proceeding. *In re Wil-Low Cafeterias; In re Straus-Duparquet, Inc.; U. S. v. Munro-Van Helms Co.; In re Public Ledger, Inc.,* supra.

The reference to vacation, severance and sick leave pay within the meaning of the term wages under Code § 507(a)(3) was intended for purposes of expansion and not exclusion. The Legislative History reveals that the wage priority found in former Section 64a(2) was raised to reflect inflation and intended to ensure that vacation, severance and sick leave pay will be afforded third priority status up to $2000, if earned within 90 days *before* the commencement of a bankruptcy case. See *House Report* No. 95–595, 95th Cong. 1st Sess. (1977) 356; *Senate Report* No. 95–989, 95th Cong. 2d Sess. (1978) 69, U.S.Code Cong. & Admin. News 1978, pp. 6029, 6311. There is nothing in the Bankruptcy Code to suggest that vacation pay incurred by a trustee or debtor in possession *after* the commencement of a case as an actual, necessary cost and expense of preserving the estate cannot qualify as an administrative expense under Code § 503(b)(1)(A). The description of the kinds of administration expenses permitted under this subsection is preceded by the word "including", which according to the rule of construction found in Code § 102(3), should not be treated as a limitation. Thus, all

---

**3.** Bankruptcy Act § 64a(1). The costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition. . .

**4.** 11 U.S.C. § 507(a)(3). Third, allowed unsecured claims for wages, salaries or commissions, including vacation, severance and sick leave pay . . . . .

actual, necessary costs and expenses of preserving the estate incurred *after* the commencement of the case are entitled to first priority status. Since wages are expressly included, and since vacation pay is universally regarded as wages, it necessarily follows that vacation pay may attain first priority status if all of the conditions under Code § 503(b)(1)(A) are met.

## TO WHAT EXTENT IS THE VACATION PAY AN ADMINISTRATIVE EXPENSE?

In determining if all or any part of the vacation pay in question is entitled to administration expense status, reference must first be made to the contractual language giving rise to the right to receive vacation pay. Section 4.1.1 of the collective bargaining agreement, which is also followed for non-union clerical employees, provides that:

"Any employee on the active payroll of the Company on July 15 of any year in the contract period . . . shall be entitled to vacation pay based on years of service . . ."

The schedule for years of service prescribes six months as a minimum and provides for twenty hours vacation pay. The vacation pay entitlement increases up to twenty-five years or more of service, for which an employee may receive vacation pay based on one hundred eighty hours of service.

Both the debtor and the Union contend that the vacation pay of those employees who were on the debtor's active payroll on June 15, 1980, should be deemed an actual and necessary cost and expense of preserving the estate and should be allowed in full under Code § 503(b)(1)(A). The Creditors' Committee asserts that if vacation pay is not barred as an administrative expense, it should be based upon the period of actual services rendered to the debtor after the commencement of the case.

■ Both the debtor and the Union point to the fact that the vacation pay in question constitutes a contractual liability under a collective bargaining agreement that was extended during the debtor in possession period, with the approval of this court, and therefore, must be treated as fully owed to all employees with more than six months' service who were on the debtor's active payroll on July 15, 1980. This position centers on the theory that the debtor's assumption and extension of the labor contract during the administration period, with the approval of the court, thereby conferred administrative status upon the rights created under the contract. This point ignores the fact that the parties to a contract cannot effectively bind the creditors and the estate as to what will constitute an administrative expense. As stated by the court in *United States v. Munro-Van Helms Company, Inc.*, 243 F.2d 10 (5th Cir. 1957): (page 12)

". . . the right to priority of payment results from the Act [now the Code] and cannot be enlarged by contract . . .".

The collective bargaining agreement creates the right to receive vacation pay and the Bankruptcy Code determines to what extent that right is to be treated as an administrative expense.

■ It does not follow because the labor contract was extended and approved by the court during the debtor in possession period that all obligations arising under such contract must be regarded as expenses of administration. Neither *In re Unishops, Inc.*, 553 F.2d 305 (2d Cir. 1977) nor *In re W. T. Grant Co.*, 474 F.Supp. 788 (S.D.N.Y.1979), affirmed 591 F.2d 133 (2d Cir. 1978) support this broad generalization. In *Unishops*, a contract calling for $100,000 as severance pay for a specific employee was assumed by the debtor after the commencement of the case. The employee performed beneficial services for the debtor and was thereafter discharged. The Bankruptcy Judge held that the $100,000 severance pay was an expense of administration and entitled to payment in full, relying upon *In re Straus-Duparquet*, 386 F.2d 649 (2d Cir. 1967). The District Court reversed on the theory that the award was for compensation which had not been approved by the court. The Court of Appeals agreed with the Bank-

ruptcy Judge that the award was for severance pay and did not require court approval because the debtor had received the benefit of the employee's services after the commencement of the case and was therefore deemed to have assumed the contract. Thus, had there been court approval of the contract, as in this case, or express assumption of the contract, as also occurred in this case, the issue as to benefits received by the debtor would not have been significant. The contract would have been treated as binding on the debtor in possession and the issue would have dealt only with the extent that the obligations under the binding contract constituted administration expenses. In such case the holding in *Straus-Duparquet* would have been controlling and severance pay owed after the commencement of the case would have been regarded as an administrative expense, as the Bankruptcy Judge held. Thus, the issue in *In re Unishops, Inc.*, supra, was whether or not, in the absence of court approval, had there been an assumption of an executory contract by the debtor to support treating severance pay under such contract as an administration expense. The case does not stand for the proposition that all obligations under debtor in possession contracts must be characterized as administration expenses, but only that before severance pay under a contract may constitute an administrative expense, the contract must have been approved by the court or assumed by the debtor in possession and binding on it. This point was expressed by the Court of Appeals as follows: (page 308)

"We are concerned here with whether or not the claim arising from Unishops' breach of this executory contract, which occurred after it filed for an arrangement, is entitled to priority as an expense of administration. It is settled law that a claim arising under an executory contract is entitled to priority 'if the trustee or debtor in possession elects to assume the contract or if he receives benefits under it.' *American Anthracite and Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 124 (2d Cir. 1960); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954

(1st Cir. 1976). As Zelin continued in Unishops employ for some time after it entered Chapter XI, we believe the debtor received benefits under the executory contract and, hence, the claimant is entitled to priority."

*In re W. T. Grant Co.*, supra, similarly deals with severance pay under a contract that had not formally been rejected by the debtor in possession. It was held that only a formal rejection is sufficient to disaffirm an executory contract and, therefore, since severance pay is not earned from day to day and unlike wages does not accrue, it was entitled to first priority as costs and expenses of administration, because the contract was deemed assumed by the debtor, citing *Straus-Duparquet*, supra.

It is settled law that vacation pay, like wages, is treated on an accrual basis, depending upon the length of service. In *Straus-Duparquet, Inc.*, supra, vacation pay was claimed as an administrative expense where at least twelve months' employment gave rise to a minimum vacation of two weeks with pay. The collective bargaining agreement contained no provision for accrued pro rata vacation. The claim for full vacation pay as an administrative expense by employees whose employment was terminated was allowed on a pro rata basis as follows: (pages 650, 651)

"We hold that the total of the claimed vacation pay is not properly classified as an expense of administration. Vacation pay is generally regarded as earned from day to day over the period of a year intervening between vacations . . .

"[1] Under this theory claimants are entitled to priority for vacation pay as an expense of administration only to the extent of the proportionate part of total vacation pay earned during the period from the beginning of the bankruptcy administration to the date of termination of employment. Of course claimants are entitled to priority under Section 64a(2) for wages earned during the three months preceding bankruptcy to the extent of three-twelfths of total vacation pay. The remainder of their vacation

pay is merely a general claim entitled to no priority."

Both the debtor and the Union reason that the vacation pay in this case should be treated in the same fashion as the severance pay obligation in *In re Straus-Duparquet, Inc.*, supra, because the extended agreement here makes no provision for payment of vacation pay on an accrual basis. They argue that the vacation pay entitlement mandates that an employee be on the debtor's active payroll on July 15, 1980, and that any employees laid off at any time prior to such date are not eligible to receive any vacation pay. This argument elides the point that the vacation pay is earned by past service and that the July 15 date is an additional condition for eligibility for earned vacation pay. In other words, on July 15, 1980, the rights of those employees who earned vacation pay as a result of previous service became vested and absolute. This point is comparable to the situation in *U. S. v. Munro-Helms*, supra, where the collective bargaining agreement provided that vacation pay and the right to a vacation would accrue only to those workers in the employ of the company on July 1. The issue there did not involve the treatment of vacation pay as an administrative expense, but whether the entire amount of the annual vacation pay constituted wages earned within the three months' wage priority period. The lower courts had allowed the full amount as earned on July 1, which was within the three months period. The Court of Appeals reversed the lower courts and concluded that the vacation pay had been earned by the performance of the entire year's service and that only one-fourth was earned during three months before commencement of the proceeding, stating: (page 13)

"The rights of the employees in this case were conditional, contingent or inchoate prior to July 1. On that day, their rights became unconditional and absolute and these rights then accrued.

.    .    .    .    .

"We decide that the vacation pay of those entitled to it under the contract constituted wages earned over the period of a year but such wages are entitled to priority only to the extent of one-fourth of the annual vacation pay."

Similarly, in *In re Public Ledger*, 161 F.2d 762 (3d Cir. 1947) the court stated: (page 769)

".    .    . vacation pay so earned before the trustees took charge does not constitute wages as administration expenses, because the service was not given during the reorganization period, and it follows logically that vacation pay earned under the trustees' management does constitute administration expense, and is within the priority such status entitled it to enjoy."

■ In this case, the employees' right to vacation pay vested on July 15, 1980. Those employees with service of six months or more who were then on the debtor's active payroll were entitled to vacation pay as an administrative expense. Although the period of service during which the vacation pay was earned may have preceded March 5, 1980, when the case was commenced, the amount to which they are entitled under the contract must be limited as an administrative expense to that portion of the year's vacation pay attributable to the debtor in possession period.

■ Those union employees who may have rendered services during the contract year to the debtor in possession but who were laid off prior to July 15, 1980, and not subsequently recalled, were entitled to their wages, which presumably were paid, but are not entitled to vacation pay as an administrative expense; not because the Bankruptcy Code bars such claim, but because they are contractually ineligible to receive any vacation pay. On the other hand, those union employees who are contractually owed vacation pay because they have more than six months employment with the debtor and were on the debtor's active payroll on July 15, 1980, are not entitled to an administrative expense status for those days during the debtor in possession period when they did not render services to the debtor due to lay offs. This determination is mandated by the express

language in Code § 503(b)(1)(A) which authorizes administration expense status for "wages, salaries or commissions for services *rendered after the commencement of the case.*" (Emphasis added) Since vacation pay is equated with wages, and earned on a day to day basis, those days after the commencement of the case, when vacation pay was earned under the labor contract, but no services were rendered to the debtor, cannot be counted in the determination of the allowed administrative expense claim.

Since the debtor has assumed an obligation to its non-union clerical employees for vacation pay upon the same terms as the union contract, their right to vacation pay as an administrative expense will be allowed on the same basis as the union employees.

Accordingly, the debtor is authorized to pay vacation pay as an administrative expense to each employee on the debtor's active payroll on July 15, 1980, who is contractually entitled to vacation pay, but the amount that each such employee may be paid should represent that portion of a year's vacation pay of such employee as determined by the number of days worked since March 5, 1980.

Additionally, any vacation pay for services rendered during the ninety days preceding the commencement of the case on March 5, 1980, up to $2000 per employee, will be entitled to a third priority under Code § 507(a)(3).

Submit order on notice.