**In re HOLABIRD COMPANY fka Grand Ledge Chair Company, Debtor.**

**Bankruptcy No. 83–00373.**

United States Bankruptcy Court, N.D. Ohio, W.D.

April 27, 1988.

Edward F. Zoltanski, Toledo, Ohio, trustee.

**112**

David Newcomer, Bryan, Ohio, for claimants.

John R. Burns, III, Fort Wayne, Ind., for debtor.

Lynn Gressley, Toledo, Ohio, local counsel for debtor.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Trustee's Objection to Claims numbered 150 through 206. The facts not being in dispute, the parties submitted Briefs on the legal issues presented in this matter. An Amicus Brief was filed by Upholster's International Union Health and Welfare Fund and the U.I.U. Pension Trust in support of the Trustee's Objection to Claims. The Court has reviewed the evidence and the arguments of counsel. Based on that review, and for the following reasons, the Court finds that the Trustee's Objections to Claims 150 through 206 should be Sustained.

## FACTS

The Debtor, The Holabird Company, did business as a furniture manufacturer in Bryan, Ohio. On April 15, 1981, The Holabird Company and the Upholster's International Union of North America, AFL–CIO, Local 605 entered into a labor agreement. The agreement did not provide for severance pay for the employees.

On March 1, 1983, the Debtor, The Holabird Company filed for relief under Chapter 11 of the Bankruptcy Code. The Debtor filed an Application for rejection of the collective bargaining agreement on March 31, 1983. A Hearing was held, and the Application was granted on June 29, 1983. The Order granting the Application to reject the executory contract was appealed by the Union and the employees. After the rejection of the agreement, the Debtor and the Upholster's Union began negotiating a new contract. Prior to reaching that Agreement, The Holabird Company laid off some senior employees and fired all the members of the negotiating committee. The employees then went on strike. A new Labor Agreement was signed on September 5, 1983. This new agreement set the wage rate for the first year, pension benefits, health insurance, vacation and paid holidays. As in the prior contract, no provision was made for severance pay.

On October 14, 1983, The Holabird Company closed its operations. The case was converted to a proceeding under Chapter 7 on February 7, 1984. On March 21, 1986, the Honorable Walter J. Krasniewski transferred the case to this Court.

In support of their Claims for severance pay and "wage differential" payments, the Union on behalf of the employees, argues that an implied contract existed with The Holabird Company, allowing them to receive severance pay, even though the contract does not provide for it. The Trustee filed an Objection to the allowance of the Claims for severance pay and "wage differential" payments. He contends that no severance pay provision can be implied under the facts in this case. The Trustee's Objection also addresses the employees' characterization of prepetition vacation pay as a Chapter 11 administrative expense under § 507(a)(1).

## LAW

In the present case, the employment agreement is governed by Ohio law. The employees' Brief cites a number of Ohio cases which allowed severance pay in situations involving employment-at-will and oral employment contracts. In the cited cases, unlike the case at bar, there was some evidence introduced which indicated an intention on the part of the employer to provide additional compensation to the employees upon termination.

The employees assert that the Debtor's representations made during the negotiations for the new contract should result in the Court finding an implied contract. They contend that the President of The Holabird Company, Steven Harris, made statements to the effect that with a new contract the business would be viable and continue its operations. The employees

cite cases such as *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 463 N.E.2d 150 (1985), *Stearns v. Ohio Savings Assn.*, 15 Ohio App.3d 18, 472 N.E.2d 372 (1984), and *Helle v. Landmark, Inc.*, 15 Ohio App.3d 1, 472 N.E.2d 765 (1984). They argue that the Court should find an implied contract for severance pay and "wage differential" payments because of their reliance on the representation that the business would be viable after the new labor contract was signed. The "wage differential" claim is based on the difference in the rate of compensation between the original labor agreement and the new contract entered into after the Application for rejection was granted.

■ The present case is distinguishable from the cases cited by the employees. Initially, it should be noted that this is not a situation involving an oral contract or employment-at-will. The Debtor and the employees bargained, and entered into a written labor agreement. Any assertion that an oral representation should alter the written terms of the contract would appear to run afoul of the parole evidence rule. Further, even assuming that the employees' position does not directly contradict the terms of the written contract, it does not appear the employees fall within any of the recognized grounds for finding an implied contract for severance pay. On the contrary, the representations made by the President as to the viability of the company were not an inducement which could give rise to an implied contract.

In *Mers, supra,* the Ohio Supreme Court held that promissory estoppel can limit an employer's right to discharge an employee who has an oral employment-at-will agreement. However, the *Mers* case involved a specific promise of reinstatement of one individual. In the case at bar, the statements by Mr. Harris were not the type of representations which would induce reliance by the employees. The Holabird's financial information was available to the Union and the employees in the Debtor's Schedules. In addition, Mr. Harris and The Holabird Company were not the only parties who would determine the success or failure of the reorganization. The Court and the creditors were also going to be influential factors in the Chapter 11 case. It has been observed that "Hope springs eternal in the human breast". Alexander Pope, *An Essay on Man,* Epistle i (1733). That, indeed, is one of the bases of Chapter 11. If the President of the Company did not express confidence in the prospects for reorganization, how could the company continue? The Union and the employees contend that they put their trust in the representations of Mr. Harris, without verification, and without making an independent judgment as to what was in their best interest. However, such reliance does not appear to have been objectively reasonable under the circumstances.

The circumstances also suggest that the Union and the employees were not induced into giving up a position of some value in order to enter the employment agreement. *Stearns v. Ohio Savings Assn., supra,* 15 Ohio App.3d at 19, 472 N.E.2d at 374. The record reflects that the Union and the employees appealed the Order approving the rejection of the executory employment contract. They exercised their right to strike. They engaged in collective bargaining. Nevertheless, the employees argue that they gave up rights and opportunities in signing the new contract, such as the right to bring an action with the National Labor Relations Board, and other employment opportunities they might have pursued. While this may be true, it does not necessarily follow that these consequences resulted from reliance on a representation that the business would be successful. It appears more likely that the decision to enter the new contract was made based upon the best interest of the employees after consideration of all the circumstances, including the financial information listed on the Debtor's Schedules.

In *Helle v. Landmark, Inc., supra,* the Court of Appeals held that the employer breached an oral contract for severance pay. Landmark was a successor corporation which represented to the employees that its take over would not change the employees' benefits. Again, the case at bar is clearly distinguishable. There are

no allegations that any oral assurances were made regarding severance pay. In addition, the parties in the present case entered into a new contract which did not provide for severance pay. Moreover, the prepetition employment contract never provided for severance pay.

The employees also maintain that in balancing the equities of this case, the fact that the employees were forced to give up higher wages for the benefit of the company and its creditors should lead to the finding of an implied contract for severance pay. The Court does not agree. The employees do not dispute the accuracy of Mr. Harris' statement that the company would have been closed within thirty (30) days if the prepetition labor contract had not been rejected. After Judge Krasniewski allowed the rejection of the 1981 labor agreement, both parties were in a position to cause The Holabird Company to cease operations. The employees negotiated to reach the best agreement possible, given the difficult economic circumstances facing the Debtor. Any assertion that the employees acted out of concern for the other creditors of The Holabird Company may not be entitled to significant weight.

Finally, policy considerations also support a finding that the employees are not entitled to severance pay, or "wage differential" payments, under the circumstances of this case. The Court does not seek to discourage owners and officers from expressing confidence in the ability of their enterprise to continue operations. Of equal importance, the Court does not wish to encourage reliance on statements which are similar in nature to "puffing". All debtors are required to disclose their financial condition in the sworn bankruptcy Schedules in order to obviate the need to rely on overly optimistic statements concerning the debtors prospects. The Schedules provide an objective basis for decision making by those who deal with Chapter 11 debtors.

Recognizing an implied contract under these circumstances would also inject another element of uncertainty into a lender's decision whether to extend credit to a Chapter 11 debtor. If statements as to the viability of the operation can lead to additional administrative claims which would diminish the funds available to unsecured and undersecured creditors, lenders may be discouraged from doing business with debtors-in-possession.

Accordingly, the Trustee's Objection to the claims for severance pay and "wage differential" payments should be Sustained. The statements by Mr. Harris were not the kind of specific representations which are recognized under Ohio law as providing a basis for an implied contract.

The Union and the employees also seek to have vacation pay, which was earned prior to the filing of the Chapter 11 petition, treated as a Chapter 11 administrative expense under § 507(a)(1). The cases which have addressed the vacation pay issue have held that vacation pay is an administrative expense only when it is actually earned during the Chapter 11 proceeding. *In re Chicago Lutheran Hospital Ass'n*, 75 B.R. 854, 856 (Bankr.N.D.Ill. 1987); *Matter of Schatz Federal Bearings Co., Inc.*, 5 B.R. 549 (Bankr.S.D.N.Y.1980). Therefore, the vacation pay which accrued prepetition not being an actual and necessary cost of preserving the estate under § 503(b), the Trustee's Objection should be Sustained.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the Trustee's Objection to Claims 150–206 are Sustained.

It is FURTHER ORDERED that the employees' Claims for severance pay and "wage differential" payments are Disallowed.

It is FURTHER ORDERED that the employees' Claims for vacation pay which accrued prepetition are not to be treated as a § 507(a)(1) administrative expense.