**In re GOLDEN DISTRIBUTORS, LTD., and Capital Cigar and Tobacco Company, Incorporated, Debtors.**

Bankruptcy Nos. 90 B 21146 to 90 B 21149.

United States Bankruptcy Court, S.D. New York.

Nov. 15, 1991.

See also 134 B.R. 750.

Summit Rovins & Feldesman, New York City, for debtors.

Schneider, Cohen, Solomon, Leder & Montalbano, Cranford, N.J., for Local 153 O.P.E.I.U. and Teamsters Local No. 560.

Ball Livingston & Tykulsker, Newark, N.J. (David Tykulsker, of counsel), for IUE Local 332.

## DECISION ON MOTION AND CROSS MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

In this voluntary Chapter 11 case, the debtor, Golden Distributors, Ltd. ("Gold-en"), has moved pursuant to 11 U.S.C. §§ 502 and 1122 and Bankruptcy Rules 3007 and 3013 for an order fixing the amount and priority of various benefit claims of former employees of Metropolitan Distribution Services, Inc. ("Metropolitan"), a division of the debtor. Such claims are alleged to be due and owing to former employees under several collective bargaining agreements between Metropolitan and various unions. The debtor proposes that sick leave and personal holidays as well as vacation and severance pay accruing after the filing of the bankruptcy petition be treated as administrative expenses under 11 U.S.C. § 503(b). The debtor contends that all other claims including vacation and severance pay accruing prepetition should be classified as general unsecured claims because they represent compensation for pre-petition services. The debtor acknowledges that a portion of these claims may be entitled to priority status under 11 U.S.C. § 507(a)(3).

Local 332 of the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers AFL–CIO ("Local 332"), Local 560 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO ("Local 560") and Local 153 of the Office and Professional Employees International Union, AFL–CIO ("Local 153"), on behalf of various former employees of Metropolitan, oppose, in part, the debtor's classification of claims and Locals 560 and 153 have cross-moved accordingly. First, the Unions contend that each employee's severance pay claim, in its entirety, should be treated as an administrative expense for the reason that severance pay, under prevailing case law, is compensation for termination and is not earned on a *per diem* basis. Thus, the Unions argue, full severance pay is due when termination of employment occurs. The Unions also assert that vacation, personal, and sick leave days earned pre-petition should be treated as administrative expenses under 11 U.S.C. § 1113(f), which creates an administrative priority for all benefits due under a collective bargaining agreement.

## FACTUAL BACKGROUND

The debtor filed with this court on November 13, 1990 ("Filing Date") petitions for reorganizational relief under Chapter 11 of the Bankruptcy Code and continued in possession and management of their businesses and properties pursuant to 11 U.S.C. §§ 1107 and 1108. The separate cases were consolidated for purposes of administration by an order of this court. The debtor's principal offices are located in Hauppage, New York. On May 31, 1991, this court authorized Debtor in Possession ("DIP") financing by First National Bank of Boston, Chase Manhattan Bank and National Westminster Bank ("Banks") pursuant to 11 U.S.C. § 364 for approximately $100 million which is secured by a super-priority secured lien in all assets of the debtor. With the court's approval, an additional $10.5 million was borrowed from Principal Mutual Life Insurance Company ("Principal") which holds a subordinated super-priority secured lien on the assets.

On May 14, 1990, Golden purchased the stock of Metropolitan which was in the business of distributing cigars, cigarettes and candy products. Metropolitan maintained a distribution facility in East Hanover, New Jersey which shut down permanently on or about August 1, 1991. The East Hanover facility employed members of Locals 153, 332 and 560 as well as non-union workers. Non-union employees were entitled to benefits under Metropolitan's general corporate policy. The rights of Union members arose from various collective bargaining agreements. Metropolitan, the debtor in possession, did not assume or reject any of the collective bargaining agreements pursuant to 11 U.S.C. § 1113.

At issue in this proceeding are personal and sick leave days and severance and vacation pay which are claimed to be due to former employees of Metropolitan's East Hanover facility. The debtor's general corporate policy and the collective bargaining agreements are substantially similar with respect to these benefits. Under both plans, the benefits in question vest in the same way. Severance and vacation pay increase according to length of service while personal and sick leave days are based upon employment in the current year only.

Prior to, and following, the decision to close the East Hanover facility, representatives from Metropolitan met with union leaders to discuss how employees' benefits should be categorized under the Bankruptcy Code. Shortly before closing, Metropolitan prepared a chart which set forth benefits earned by each employee. The chart separates benefits into categories for pre-petition and post-petition claims based upon when they were earned. Metropolitan asserts that benefits earned pre-petition must be treated as general unsecured claims and benefits earned post-petition must be treated as administrative expenses. Accordingly, the debtor proposes that employee's accrued benefits be classified as follows:

a. any severance pay and vacation pay which accrued or was earned as a result of employment after the Filing Date, as well as any personal holiday pay and sick leave pay to which an employee is entitled, would be treated as an administrative expense pursuant to 11 U.S.C. § 503(b);

b. any severance pay and vacation pay which accrued or was earned as a result of employment within 90 days before the Filing Date would be treated as a priority claim pursuant to 11 U.S.C. § 507(a)(3) and would be subject to a $2,000 cap per employee; and

c. any severance pay and vacation pay which accrued or was earned as a result of employment within 90 days before the Filing Date and which exceeded the $2,000 cap, as well as any severance pay and vacation pay which accrued or was earned more than 90 days prior to the Filing Date, would be treated as an unsecured claim.

*Trial Memorandum In Support of Debtors' Motion*, at 7–8. The debtor asserts that any claim for benefits should be subject to the DIP lenders. That is, the benefits claims would be subordinate to the super-priority secured position of the Banks and the subordinated super-priority position of Principal.

The Unions oppose, in part, Metropolitan's classification of claims. The Debtor and the Unions agree that sick leave and personal days as well as the portion of vacation pay that accrued after the Filing Date are administrative expenses under 11 U.S.C. § 503(b) because they are based upon post-petition employment and are necessary for the preservation of the estate. These claims are subordinate to the unsecured claims of the DIP lenders pursuant to 11 U.S.C. § 364(c)(1) which elevates those post-petition creditors above claims allowed under 11 U.S.C. § 503(b).

The Unions only dispute the debtor's classifications of severance pay and that part of vacation pay which represents services rendered pre-petition. The Unions assert that severance pay claims, in their entirety, should be treated as administrative expenses because severance pay, under prevailing case law, is triggered by termination of employment and does not represent compensation based on length of service. Thus, the Unions contend, former employees are entitled to full severance pay upon termination. The Unions also argue that vacation pay due to Union members, in its entirety, should be treated as administrative expense under 11 U.S.C. § 1113(f), which creates an administrative priority for all benefits authorized under a collective bargaining agreement.

## DISCUSSION

Under 11 U.S.C. § 507(a)(1) administrative expense claims, including claims allowed under 11 U.S.C. § 503(b), are given first priority status subordinate only to secured creditors. 11 U.S.C. § 503(b) provides in relevant part as follows:

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered *after* commencement of the case....

11 U.S.C. § 503(b) (emphasis added).

■ Although 11 U.S.C. § 503(b) does not specifically include related benefits, vacation and severance pay, as forms of wages, are allowable as expenses necessary for the preservation of the estate and thus, are entitled to priority status under 11 U.S.C. § 507(a)(1). *In re Schatz Federal Bearings Co., Inc.,* 5 B.R. 549, 552 (Bankr.S.D.N.Y.1980). The issues in the present case are whether severance and vacation pay, which are calculated according to length of service, should be treated as administrative expenses in their entirety pursuant to 11 U.S.C. §§ 503(b) and 507(a)(1). The court must also determine whether the benefit claims are subject to the claims of the DIP lenders.

## SEVERANCE PAY

■ Severance pay for terminated employees is a cost of carrying on business and constitutes an administrative expense. *Amalgamated Insurance Fund v. William B. Kessler, Inc.,* 55 B.R. 735, 739 (S.D.N.Y.1985); *In re Chicago Lutheran Hospital Assoc.,* 75 B.R. 854, 856 (Bankr. N.D.Ill.1987). In the instant case, the employer, Golden, as is typically the case, calculated severance pay according to an employee's length of employment. A portion may be based upon services rendered prior to the filing of the bankruptcy petition. Compensation for pre-petition services does not qualify as a first priority administrative expense under 11 U.S.C. § 503(b). Nevertheless, this court follows the Second Circuit ruling that severance pay, in its entirety, is entitled to first priority administrative expense status for the reason that severance pay is compensation for termination and, unlike wages, does not accrue on a *per diem* basis. *Straus–Duparquet, Inc. v. Local Union No. 3, International Brotherhood of Electrical Workers, AFL–CIO,* 386 F.2d 649, 650 (2d Cir. 1967). Because they are allowed under 11 U.S.C. § 503(b), severance pay claims are afforded administrative expense status under 11 U.S.C. § 507(a).

This court rejects the debtor's argument that *Straus–Duparquet,* which was decided under the Bankruptcy Act of 1898, has been overruled by the enactment of the

Bankruptcy Code in 1979. The debtor contends that the portion of severance pay which represents services rendered pre-petition cannot be an administrative expense under 11 U.S.C. § 503(b) because that section explicitly includes expenses accruing *after* the petition date. However, the holding of *Straus–Duparquet* has been adopted by the Second Circuit subsequent to the enactment of the Bankruptcy Code. *In re W.T. Grant Co.*, 620 F.2d 319 (2d Cir.) (*per curiam*), cert. denied, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980). The Second Circuit reiterated its adherence to the holding in *Straus–Duparquet* when it said in *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98 (2d Cir.1986), that

> [o]ur decision is not inconsistent with cases holding that a bankrupt's obligation to pay severance pay, which arises out of the termination of an employee during the bankruptcy, is an administrative expense entitled to priority. *See, e.g., In re W.T. Grant Co.*, 620 F.2d 319, 320–21 (2d Cir.), *cert. denied*, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980); *Matter of Unishops, Inc.*, 553 F.2d 305, 308 (2d Cir.1977); *Straus–Duparquet, Inc. v. Local U. No. 3 Int. Bro. of Elec. Wkrs.*, 386 F.2d 649, 650–51 (2d Cir.1967). These decisions rest on the basis that severance pay is compensation for the hardship which all employees, regardless of their length of service, suffer when they are terminated and that it is therefore "earned" when the employees are dismissed. Accordingly it is granted a first priority as a cost of doing business during the bankruptcy proceeding.

*McFarlin's*, 789 F.2d at 104. This court declines to follow decisions of other circuits which support the debtor's position, regardless of their persuasiveness. *See In re Health Maintenance Foundation*, 680 F.2d 619 (9th Cir.1982); *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976); *In re Public Ledger*, 161 F.2d 762 (3d Cir. 1947).

## VACATION PAY

Metropolitan's former employees are also entitled to compensation for unused vacation days pursuant to its general corporate policy as well as several similar collective bargaining agreements. Under both benefit plans, an employee's annual vacation period increases based upon length of service. Accordingly, an employee's vacation pay claim may reflect services rendered both before and after the petition date. As the debtor acknowledges, the portion which represents services rendered after the filing of the bankruptcy petition is an administrative expense entitled to first priority under 11 U.S.C. §§ 503(b) and 507(a)(1). *Schatz Federal Bearings*, 5 B.R. at 551.

■ At issue in this proceeding is whether the amount of vacation pay which represents pre-petition employment must be afforded the same status as that which represents post-petition employment. As to non-union employees whose rights to benefits emanate from Metropolitan's corporate policy, it is well-settled that the portion of their vacation pay claims which is based upon work performed pre-petition is not entitled to priority administrative expense status. *Straus–Duparquet*, 386 F.2d at 650–51; *Sulmeyer v. Southern California Pipe Trades Trust Fund*, 301 F.2d 768 (9th Cir.1962); *Chicago Lutheran Hospital*, 75 B.R. at 856; *Schatz Federal Bearings*, 5 B.R. at 553–56.

■ The rights of union members to severance and vacation pay which arise under collective bargaining agreements are regulated by 11 U.S.C. § 1113. The section sets forth the conditions under which a trustee in bankruptcy may assume or reject a collective bargaining agreement. Section 1113(f) provides as follows:

> No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

11 U.S.C. § 1113(f). Section 1107 extends to the debtor in possession all of the powers and duties of the trustee. Thus, Metropolitan, as debtor in possession, stands in

the place of the trustee with respect to 11 U.S.C. § 1113.

By its literal terms, section 1113(f) prevents collective bargaining agreements from being modified by the provisions of 11 U.S.C. § 503(b). That is, claims arising out of a collective bargaining agreement may be granted priority status regardless of whether they meet the requirements of 11 U.S.C. §§ 503(b) and 507(a). Thus, 11 U.S.C. § 1113(f) creates a super-priority for all pre-petition as well as post-petition payments due under a collective bargaining agreement which, in effect, trumps 11 U.S.C. § 507.

The Second Circuit's decision in *In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir.1990), *cert. denied sub nom. Air Line Pilots Ass'n v. Shugrue*, —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991), supports this interpretation of section 1113(f), although *Ionosphere* does not directly address the issue before this court. The Second Circuit construed 11 U.S.C. § 1113(f) literally and held that the section prohibits application of other provisions of the Bankruptcy Code when those provisions would permit a debtor to terminate or modify unilaterally a collective bargaining agreement without meeting the requirements of 11 U.S.C. § 1113(f). *Ionosphere*, 922 F.2d at 990. The court based its strict construction of section 1113(f) on Congressional intent as reflected on the face of the statute.

> Subsection 1113(f) evinces an intent that other provisions of the Bankruptcy Code are inoperable to the extent that they allow a debtor to bypass the requirements of § 1113. The language of the statute indicates that Congress intended § 1113 to be the sole method by which a debtor could terminate or modify a collective bargaining agreement and that application of other provisions of the Bankruptcy Code that allow a debtor to bypass the requirements of § 1113 are prohibited.

*Ionosphere*, 922 F.2d at 989–90.

Several other courts have also construed 11 U.S.C. § 1113(f) literally. The leading case in this area is *In re Unimet Corp.*, 842 F.2d 879 (6th Cir.), *cert. denied*, 488

U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988). In *Unimet*, the court held that retiree benefits due to former employees under a collective bargaining agreement which did not qualify as administrative expenses under 11 U.S.C. §§ 503(b) and 507(a)(1), were entitled to a priority status equivalent to an administrative expense for the reason that 11 U.S.C. § 1113(f) prevents a debtor from unilaterally modifying a collective bargaining agreement. *Unimet*, 842 F.2d at 884. This priority status has been held as superior to administrative expenses claimed under 11 U.S.C. § 507.

> *Unimet* does not explicitly state that claims under section 1113 should be given "super-priority" over claims under section 507. Yet, by requiring that the retiree benefits of the unrejected collective bargaining agreement be paid, despite failing to qualify as an administrative expense, *Unimet*, in effect established a super-priority over section 507.

*In re Ohio Corrugating Co.*, No. 490–CV0810, 1991 WL 213850, at *4 (N.D.Ohio Jan. 3, 1991).

■ It is of no moment that the debtor in this case did not move to assume, reject or modify the collective bargaining agreements. Indeed, a debtor is obliged to adhere to the terms of collective bargaining agreements which have not been rejected because the agreements remain in effect and binding until rejection occurs. *In re Canton Castings, Inc.*, 103 B.R. 874, 875 (Bankr.N.D.Ohio 1989); *In re St. Louis Globe–Democrat, Inc.*, 86 B.R. 606, 610 (Bankr.E.D.Mo.1988). Thus, Metropolitan is bound by the collective bargaining agreements because they were not formally rejected.

It should be noted that the super-priority administrative expense afforded under 11 U.S.C. § 1113(f) is designed to give these claims the same treatment as under 11 U.S.C. § 503(b) even though not expressly provided for in 11 U.S.C. § 1113(f). However, the DIP lenders who obtained super-priority status under 11 U.S.C. § 364(c)(1), nonetheless have a higher priority status than section 1113(f) claims because section 364(c)(1) claimants prime section 503(b)(1)

claims, including those treated as section 503(b) claims under section 1113(f). This is so because unlike the conflict between 11 U.S.C. § 1113(f) and 11 U.S.C. § 503(b), there is no conflict between 11 U.S.C. § 364(c)(1) and 11 U.S.C. § 1113(f). The latter two sections may be harmonized to reflect the fact that 11 U.S.C. § 1113(f) accords administrative status to post-petition claims arising under collective bargaining agreements even though they do not qualify under 11 U.S.C. § 503(b), but it does not elevate such claims to the higher priority afforded post-petition lenders under 11 U.S.C. § 364(c)(1).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. Each employee's claim for unused sick leave and personal days is allowed under 11 U.S.C. § 503(b) as necessary for the preservation of the estate and thus, is a first priority administrative expense under 11 U.S.C. § 507(a). These claims are subordinate to those of the unsecured post-petition lenders pursuant to 11 U.S.C. § 364(c)(1).

3. The claims of non-union employees for severance pay, in their entirety, are allowed under 11 U.S.C. § 503(b) because severance pay is not earned on a *per diem* basis but is triggered upon termination of employment. Therefore, each employee's complete severance pay claim is an administrative expense under 11 U.S.C. § 507(a)(1). The claims are subject to the claims of the post-petition lenders under 11 U.S.C. § 364(c)(1).

4. Vacation pay claims of employees who are not affiliated with the Unions qualify as administrative expenses under 11 U.S.C. §§ 503(b) and 507(a)(1) only to the extent that they represent services rendered after the commencement of the bankruptcy proceeding. The portion of each vacation pay claim which is based upon pre-petition employment is a general unsecured claim with the amount earned within 90

days prior to the petition date treated as a priority under 11 U.S.C. § 507(a)(3) subject to a $2,000 statutory cap for each claim. These claims are subordinate to those of the post-petition lenders under 11 U.S.C. § 364(c)(1).

5. Vacation and severance pay claims of Union members, in their entirety, are treated as priority claims equivalent to administrative expenses pursuant to 11 U.S.C. § 1113(f) which, in effect, creates a super-priority for post-petition payments due under a collective bargaining agreement. However, because these claims are treated as claims under 11 U.S.C. § 503(b), they are subordinate to the 11 U.S.C. § 364(c)(1) claims of the post-petition lenders.