USCA1 Opinion

 

 January 26, 1995 NOT FOR PUBLICATION ___________________ UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1834 IN RE DOCTORS HOSPITAL, INC., Appellant, v. RAMON VILAR, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Carlos Batista-Jimenez with whom Charles A. Cuprill-Hernandez was _______________________ ____________________________ on brief for appellant. Igor J. Dominguez with whom Igor J. Dominguez Law Offices was on _________________ _____________________________ brief for appellee. ____________________ ____________________ Per Curiam. In July 1989, Doctor's Hospital (the ___________ "Hospital") filed a chapter 11 petition in the United States Bankruptcy Court for the District of Puerto Rico. Thereafter, the Hospital continued to operate as debtor-in- possession. The following year the Hospital hired Ramon Vilar to serve as its Hospital Administrator. Vilar signed a five-year employment contract with the Hospital on December 14, 1990. Under the contract, Vilar was given "complete autonomy" in the day-to-day operation of the hospital. By October 1991, the Hospital desperately needed funds in order to continue operating. To secure financing, the Hospital entered into a court-approved agreement with Medicos Especializados y de Emergencias, Inc. ("Medicos") and Medicos' President, Dr. Roberto Kutcher Olivio. Under the agreement, Medicos and Kutcher acquired 51 percent of the Hospital's capital stock; and Medicos and Kutcher assumed responsibility for administering and operating the Hospital. The agreement took effect on November 1, 1991, and on November 4, 1991, Kutcher informed Vilar that his contract with the Hospital was terminated. Vilar then filed with the bankruptcy court an application for payment of administrative expenses, including expenses for severance pay and vacation pay, pursuant to 11 U.S.C. 503(b)(1)(A). Administrative expenses are "the actual, necessary costs and expenses of preserving the -2- -2- estate, including wages, salaries, or commissions for services rendered after the commencement of the case". Id. ___ Severance and vacation pay, incident to post-petition employment, are widely considered to be administrative expenses. See, e.g., Matter of Schatz Federal Bearings Co., ___ ____ _______________________________________ Inc., 5 B.R. 549, 552 (S.D.N.Y. Bankr. 1980). The Bankruptcy ____ Code, 11 U.S.C. 507(a)(1), assigns first-priority status to section 503(b) expenses to encourage third parties to supply those goods and services necessary to rehabilitate the debtor's business. See, e.g., In re Mammoth Mart, Inc., 536 ___ ____ _________________________ F.2d 950 (1st Cir. 1976). Clause 4(a) of the contract allowed Vilar four weeks of compensated vacation time for each year that the contract was in effect. Vilar based his claim for severance pay on clause 13 of his employment contract with the Hospital, which states: The Board may, in its discretion, terminate Vilar's duties as Administrator of the Hospital. Such action will require a majority vote of the Board and will become effective when such vote is taken. After such termination, all rights, duties and obligations of both parties shall cease except that Hospital will continue to pay Vilar his then monthly salary of (sic) for the month in which his duties were terminated and for six (6) consecutive months thereafter, as agreed upon termination payment. In June 1992 the bankruptcy court heard testimony concerning Vilar's application for payment of administrative expenses. The Hospital objected to the application, arguing -3- -3- that it did not have to pay Vilar anything because he had been terminated for cause. According to the Hospital, Vilar had breached the contract because he had failed to perform his duties as Administrator and because he was insubordinate and negligent. Vilar maintained that he satisfactorily performed all of his obligations under the contract. At the conclusion of the hearing, the bankruptcy court stated that "[t]he evidence . . . shows that the [Hospital's] board of directors may have had cause to terminate the employment contract but opted not to do so." The court found that Medicos and Kutcher had terminated Vilar with the approval of the Hospital's board of directors and that the termination had triggered Clause 13, thereby giving Vilar a valid claim for severance pay. However, the court concluded that the claim for severance pay, although allowed as an unsecured claim, was not entitled to priority status because clause 13 did not benefit the estate. The bankruptcy court did find that Vilar was due vacation pay as an administrative priority. On review, the district court affirmed the bankruptcy court's allowance of both claims. The district court specifically endorsed the finding of the bankruptcy court that the dismissal had not been made for cause. The district court also upheld the bankruptcy court's holding that the claim for vacation pay was an administrative expense, but the -4- -4- district court reversed with respect to severance pay, concluding that it too was an administrative expense entitled to priority. On appeal, the Hospital disputes that Vilar has a valid claim to severance and vacation pay. The Hospital's argument is simple: it treats the bankruptcy court's reference to cause--that the Hospital "may have had cause" to terminate Vilar--as a determination that Vilar did breach his contract. But "may have" and "did" are two different things. Even if a material breach by Vilar would excuse the Hospital from paying severance or vacation pay, there is no such finding of cause here. The bankruptcy judge seems to have treated the Hospital as having waived any such claim of breach by failing to assert, when it fired Vilar, that it was doing so because of Vilar's misconduct. Whether the bankruptcy judge was right or wrong on this issue of waiver is not before us because the Hospital offers no argument to show that he was wrong. Why the Hospital has chosen to argue the case on a ground refuted by the bankruptcy court's own order is a complete mystery. The Hospital also attacks the priority status afforded to the vacation and severance claims, but again its principal ground is the mistaken assumption that the Hospital was found to have cause to terminate the contract. Indeed, the Hospital admits that most courts that have considered -5- -5- severance pay claims in bankruptcy have held that they comprise an administrative expense entitled to priority. The reason, as the Hospital states, is that the severance pay commitment is a cost of carrying on the business. E.g., In ____ __ re Golden Distributors, Ltd., 134 B.R. 760 (S.D.N.Y. Bankr. _____________________________ 1991). The only disagreement, not presented here, arises where the contract was made prior to bankruptcy. E.g., id. ____ ___ The closest that the Hospital comes to raising a colorable issue on appeal is to defend, in a couple of sentences, the bankruptcy court's initial determination that the severance pay should not be given a priority. The reason, says the Hospital, is that the severance pay is not linked to the services provided post petition or to the length of employment but was provided in compensation for the termination of the contract. The short answer is that the severance provision was a contracted for employment benefit, just like salary or vacation pay, promised in exchange for Vilar's services. _________________ Vilar earned it by providing post-petition services (or at least there is no finding to the contrary), and the commitment to pay severance, together with other commitments, benefited the estate by inducing Vilar to act as the Hospital's administrator. In these circumstances, severance pay falls squarely within the rationale for allowing a -6- -6- priority. See generally In re Mammoth Mart, Inc., 536 F.2d _____________ ________________________ at 954. Affirmed. ________ -7- -7-